# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CALA DIAMONDS, LLC                      :
                                        : CIVIL ACTION
      Plaintiff,                       :
                                        :
   vs.                                  :
                                        : NO. 17-CV-1136
HRA GROUP HOLDINGS,                     :
ITAY ARIEL,                             :
CROSSWORKS MANUFACTURING LTD,           :
HRA USA LTD, and                        :
MICHELLE SEGOLY                         :
                                        :
      Defendants.                      :

## MEMORANDUM AND ORDER

JOYNER, J.                                          September 21, 2017

     This civil action has been brought before the Court on
Motion of the Defendants to Dismiss the Plaintiff's Complaint
(Doc. Nos. 11 and 12) pursuant to Fed. R. Civ. P. Nos. 12(b)(2),
12(b)(6), and 9(b).  For the reasons set forth below, Defendants'
Motion shall be granted in part and denied in part.

## Factual Background

    Plaintiff CALA Diamonds, LLC ("CALA" or "Plaintiff") is a
family-owned, retail jewelry business founded in 2014 by Paul
and Becky Physh, with its principal place of business in
Brookville, Pennsylvania. (Compl., ¶¶ 1, 10).  Defendant HRA
Group Holdings ("HRA Group") is incorporated under the laws of

British Columbia, Canada and maintains a principal place of
business in Vancouver, British Columbia, Canada and is involved
in the international, wholesale jewelry business. (Compl.,¶ 2).
Defendant H.R.A. U.S.A., Ltd. ("HRA USA") is alleged to be a
registered agent of HRA Group and is incorporated in the State of
Washington. (Compl., ¶ 5).  Defendant Crossworks Manufacturing
Ltd. ("Crossworks")(HRA Group, HRA USA, and Crossworks,
collectively, "Corporate Defendants") is alleged to be "a
division, subsidiary, partner or entity legally related to HRA
Group" and maintains its principal place of business in
Vancouver, British Columbia, Cananda, and is incorporated under
the laws of the Northwest Territories, Canada. (Compl., ¶ 4).
Defendant Michelle Segoly ("Segoly") is employed as the Brand
Manager of Forevermark USA and Canadian Rocks for HRA Group, and
resides in Vancouver, British Columbia, Canada. (Compl., ¶ 8).
Lastly, Defendant Itay Ariel ("Ariel")(Segoly and Ariel,
together, "Individual Defendants")(Corporate Defendants and
Individual Defendants, together, "Defendants") "is an officer and
authorized sales representative of Crossworks, HRA Group and/or
HRA USA," and resides in Vancouver, British Columbia, Canada.
(Compl., ¶ 6).

This action arises from a business relationship that
developed between Plaintiff and Defendants in 2014, after Paul
Physh contacted, scheduled, and traveled to Vancouver, Canada to

"seek[] guidance and advice on how to become successful diamond dealers." (Compl., ¶¶ 12-16). At this meeting in August 2014, Mr. Physh met with Defendants Segoly and Ariel, who allegedly offered Plaintiff assistance and assurance that Defendants would sell diamonds to Plaintiff. (Compl., ¶¶ 17-18). Over the course of the following two years, Plaintiff would make several purchases from Defendants, with three transactions in particular making up the substance of this action.

According to the complaint, in March 2015, Segoly presented Plaintiff with a diamond ("Pink Diamond") that she claimed was unique, as it was "one of only two diamonds in the pink color grade to come out of Canada larger than 1 carat," which Plaintiff subsequently purchased for $25,000. (Compl., ¶¶ 23-25). After experiencing difficulty in selling this diamond, Plaintiff requested documentation to substantiate Segoly's alleged claims about the uniqueness of this particular gemstone; however, this request proved fruitless. (Compl., ¶¶ 27-29). Plaintiff alleges that, in reliance on these misrepresentations by Segoly, it overpaid for the diamond and injured its reputation with its potential customers who perceived Plaintiff as having overpriced the diamond. (Compl., ¶ 30).

Plaintiff also alleges that, in May 2015, it purchased five rings ("Diamond Rings"), each of which contained colored diamonds, for a total of $558,000. (Compl., ¶ 37). Defendants

included a certification on the second page of the invoice for these rings, which stated that the diamonds were not "clarity enhanced diamonds." (Compl., ¶ 40). Plaintiff argues that it is industry practice for sellers of colored diamonds to disclose to purchasers "whether the clarity of the color of the diamonds has been enhanced in any way." (Compl., ¶ 39). In the process of getting the colored diamonds appraised, Plaintiff had mentioned to Defendants that it might need to have the diamonds extracted from the rings to more accurately determine their value. (Compl., ¶ 46). Allegedly, Defendants repeatedly urged Plaintiff not to do so as removal would damage the settings. (Compl., ¶ 47). Nevertheless, in April 2016, Plaintiff discovered that the diamonds were color-enhanced after extracting them from the rings. (Compl., ¶ 60). Consequently, Plaintiff requested a refund, but Defendants refused. (Compl., ¶ 65).

In July 2015, Defendants brought it to the attention of Plaintiff that there was a necklace for purchase, referred to as the Ideal Square Riviera ("Riviera necklace"), which Defendants claimed was worn by Kate Hudson on the red carpet at the Academy Awards ceremony. (Compl., ¶¶ 70-71). After discussing an offer with Ariel, Plaintiff purchased the necklace for $799,000. (Compl., ¶ 75). Following the purchase of the Riviera necklace, it is alleged that Defendants had inconsistently stated who designed the necklace. (Compl., ¶¶ 77-78). Despite Plaintiff's

repeated requests for documentation to verify that Kate Hudson had worn the necklace on the red carpet, and to establish who actually designed the necklace, Defendants never provided such information. (Compl., ¶ 80). Plaintiff asserts that they relied on these claims when purchasing the necklace, which caused them to pay significantly more for it than they otherwise would have. (Compl., ¶¶ 85-89). Eventually in May 2016, Segoly informed Plaintiff that it was the Defendants who had actually designed the Riviera necklace. (Compl., ¶ 120). In June 2016, Ariel stated that the Riviera necklace had been "sent to Forevermark to be used on the Red Carpet and that Forevermark 'used' the Riviera on many occasions," but still provided no proof that it was ever worn by Kate Hudson. (Compl., ¶ 122).

Against this backdrop, Plaintiff brings this lawsuit against all of the Defendants alleging fraud and fraudulent concealment. In addition, Plaintiff brings claims only against the Corporate Defendants for breach of contract, breach of express and implied warranties, and negligent misrepresentation.

## Standards Governing Motions under Fed. R. Civ. P.12(b)(2), 12(b)(6) and 9(b)

### (A) Dismissal Pursuant to Rule 12(b)(2)

It is axiomatic that "[j]urisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject matter jurisdiction) and authority over the parties (personal jurisdiction) so that the court's decision will bind

them.  _Ruhrgas AG v. Marathon Oil Co._, 526 U.S. 574, 577, 119 S. Ct. 1563, 1566, 143 L. Ed. 2d 760 (1999).  Indeed, a court of competent jurisdiction is a court with the power to adjudicate the case before it.  _Lightfoot v. Cendant Mortgage Corp._, 137 S. Ct. 553, 560, 196 L. Ed. 2d 493, 501 (2017).  "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  _Vermont Agency of Natural Resources v. United States ex rel. Stevens_, 529 U.S. 765, 778-779, 120 S. Ct. 1858, 1865-1866, 146 L. Ed. 2d 836 (2000)(quoting _Ex parte McCardle_, 74 U.S. 506, 7 Wall. 506, 514, 19 L. Ed. 264 (1986)); _Steel Co. v. Citizens for a Better Environment_, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998).  Therefore the validity of an order of a federal court depends upon the court's having jurisdiction over both the subject matter and the parties. _Insurance Corporation of Ireland v. Compagnie Des Bauxites_, 456 U.S. 694, 701, 102 S. Ct. 2099, 2103, 72 L. Ed. 2d 492 (1982).

Unlike subject matter jurisdiction which is both an Article III and a statutory requirement which cannot either be waived or conferred by agreement of the parties, personal jurisdiction represents an individual liberty interest which can, like other such rights, be waived.  _Id_, 456 U.S. at 702-704, 102 S. Ct. at 2104-2105.  Consequently, a defendant has the initial burden of raising the defense of lack of personal jurisdiction and this may

be done by filing a motion for dismissal.  TES Franchising, LLC v. Dombach, Civ. A. No. 10-0017, 2010 U.S. Dist. LEXIS 130314 at *3 (E.D. Pa. Dec. 9, 2010); Potts v. Harrah's Atlantic City Hotel & Casino, Civ. A. No. 06-5422, 2007 U.S. Dist. LEXIS 47197 at *3 (E.D. Pa. June 28, 2007); Poole v. Sasson, 122 F. Supp. 2d 556, 557 (E.D. Pa. 2000); Fed. R. Civ. P. 12(b)(2), 12(h)(1), (3). Once the defense is raised, the burden falls to the plaintiff to establish the court's jurisdiction over the moving defendant(s) by filing affidavits or producing other competent evidence. Metalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996).  In the absence of an evidentiary hearing, a plaintiff's complaint need only establish a *prima facie* case of personal jurisdiction.  Allaham v. Naddaf, No. 15-2575, 635 Fed. Appx. 32, 36-37 (3d Cir. Dec. 17, 2015); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).  And, unless and until an evidentiary hearing is held, a district court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  Allaham, at 37(quoting Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 142, n.1 (3d Cir. 1992)).  See also, Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003).

**(B) Dismissal Under Rule 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Renfro v. Unisys Corp., 671 F.3d 314, 320 (3d Cir. 2011). In reviewing a challenged pleading, the courts are required to accept all well-pleaded factual allegations as true and draw all reasonable inferences in the non-movant's favor. Ebert v. Prime Care Medical, Inc., No. 14-2020, 2015 U.S. App. LEXIS 1843 at *4 (3d Cir. Feb. 5, 2015); Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002); Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). In so doing, reliance is placed upon "the complaint, attached exhibits, and matters of public record." Ebert, supra, (quoting Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007)). Because Fed. R. Civ. P. 8(a)(2) requires a 'showing,' rather than a blanket assertion, of entitlement to relief, courts evaluating the viability of a complaint must look beyond conclusory statements and determine whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face. Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007); Renfro, supra. Indeed, it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed

8

conduct." <u>Umland v. Planco Financial Services, Inc.</u>, 542 F.3d 59, 64 (3d Cir. 2008)(quoting <u>Philips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

**(C) Dismissal Pursuant to Rule 9(b)**

Fed. R. Civ. P. 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) is therefore satisfied when a plaintiff "plead[s] with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." <u>Lum v. Bank of America</u>, 361 F.3d 217, 223-24 (3d Cir. 2004)(internal quotations and citations omitted). A plaintiff may do this by "pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." <u>Id.</u> at 224 (internal quotations and citations omitted). Lastly, in addition to alleging the "general content of the misrepresentation," it

must be alleged who made the misrepresentation and to whom it was made. Id. When fraud is not pled with the required particularity, it is proper for the court to dismiss those claims.

## Discussion

### (A) Personal Jurisdiction

Pursuant to Fed. R. Civ. P. 4(e), a district court may assert personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits. Eurofins Pharma U.S. Holdings v. Bioalliance Pharma, 623 F.3d 147, 155 (3d Cir. 2010); Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001)(internal quotations and citations omitted). "Whether a district court has personal jurisdiction over a nonresident defendant is a two-part inquiry. First, there must be a statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the law of the forum state." Eurofins, supra,(citing Metcalfe, supra.). "Second, the nonresident must have minimum contacts with the forum state sufficient to satisfy constitutional due process." Id. Stated otherwise, "[u]nder the Due Process clause, the exercise of personal jurisdiction over a non-resident defendant is appropriate when the defendant has 'certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice.'" <u>Fesniak v. Equifax Mortgage Services, LLC</u>, Civ. A. No. 14-3728, 2015 U.S. Dist. LEXIS 66238, *6, 2015 WL 2412119 (D. N.J. May 21, 2015)(quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) and <u>Milliken v. Meyer</u>, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)).

Pennsylvania's long-arm statute permits the exercise of personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C. S. A. §5322(b). In determining whether a court's exercise of jurisdiction comports with due process, the court must consider "the relationship among the defendant, the forum, and the litigation." <u>Shaffer v. Heitner</u>, 433 U.S. 186, 97 S. Ct. 2569, 2570, 53 L. Ed.2d 683 (1958). For sufficient minimum contacts to exist, a defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958). Additionally, it must be reasonably foreseeable that the defendant would be haled into court in that forum. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed.2d 490 (1980).

Finally, there are two types of personal jurisdiction: (1) general jurisdiction, which is based upon the defendant's "continuous and systematic" contacts with the forum and which exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities; and (2) specific jurisdiction, which is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities. Fatouros v. Lambrakis, 627 Fed. Appx. 84, 87, 2015 U.S. App. LEXIS 16839, 2015 WL 5574413 (3d Cir. Sept. 18, 2015); Remick, 238 F.3d at 255.

Here, Plaintiff asserts only that this Court has specific jurisdiction and we therefore only assess whether specific jurisdiction can properly be exercised over the Defendants.[1] Determining whether specific jurisdiction exists involves a three-part inquiry. Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (2008)(citing O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007)). First, the defendant must have "purposefully directed its activities" at the forum. Id.(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Second, the litigation must

---

[1] Although Plaintiff's Complaint is silent as to jurisdiction, it is apparent from the face of the pleading that jurisdiction is premised upon diversity pursuant to 28 U.S.C. §1332. In response to this motion, Plaintiff argues only as to specific jurisdiction and neither avers nor produces any evidence that Defendants have maintained the requisite systematic and continuous contacts with this forum such as would give rise to a finding of general jurisdiction in this matter. It thus appears that Plaintiff concedes that general jurisdiction is lacking.

"arise out of or relate to" at least one of those activities.

Id.(quoting Helicopteros Nacionales de Colombia, S.A. v. Hall,

466 U.S. 408, 414-415, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404

(1984)).  And third, if the prior two requirements are met,

"courts may consider additional factors to ensure that the

assertion of jurisdiction otherwise comports with fair play and

substantial justice."  Id.  What's more, "even when the

defendant's contacts with the forum alone are far too small to

comport with the requirements of due process under [this]

traditional analysis," a plaintiff may demonstrate personal

jurisdiction if he or she shows:

> (1) the defendant committed an intentional tort;
>
> (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Remick, 238 F.3d at 259 (citing Calder v. Jones, 465 U.S. 783,

789, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) and IMO Industries,

Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998)).

In applying the foregoing legal principles to the matter now

before us, we observe that the Plaintiff's complaint contains six

counts against the defendants: for fraud, fraudulent concealment,

breach of contract, breach of express warranties, breach of

implied warranties and negligent misrepresentation.  "While it

may not be necessary to do so in every multiple claim case, ...
because there are different considerations in analyzing
jurisdiction over contract claims and over certain tort claims,"
we believe a claim specific analysis is necessary here. <u>Remick</u>,
238 F.3d at 255-256.

**(i) Claims for Breach of Contract and Breach of Warranties**

"Under Pennsylvania law, 'contract formation requires (1) a
mutual manifestation of an intention to be bound, (2) terms
sufficiently definite to be enforced, and (3) consideration."
<u>Tax Matrix Technologies, LLC v. Wegmans Food Markets, Inc.</u>, 154
F. Supp. 3d 157, 172 (E.D. Pa. 2016)(quoting <u>Kirleis v. Dickie,</u>
<u>McCamey & Chilcote, P.C.</u>, 560 F.3d 156, 160 (3d Cir. 2009)).
"[A] contract may manifest orally, in writing, or as an inference
from the acts and conduct of the parties." <u>Meyer, Darragh,</u>
<u>Buckler, Bebenek & Eck, P.L.L.C v. Law Firm of Malone Middleman,</u>
<u>P.C.</u>, 137 A.3d 1247, 1258 (Pa. 2016). To maintain a cause of
action for breach of contract, the plaintiff must show: (1) the
existence of a contract, including its essential terms; (2) a
breach of a duty imposed by the contract, and (3) resultant
damages. <u>McShea v. City of Philadelphia</u>, 606 Pa. 88, 97, 995
A.2d 334, 340 (2010); <u>Hart v. Arnold</u>, 2005 PA Super 328, 884 A.2d
316, 332 (Pa. Super. 2005).

"In determining jurisdiction over a breach of contract
claim, we must consider the totality of the circumstances,

including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick, 238 F.3d at 256(citing Mellon Bank (East) PSFS, National Association v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992)). And, given that express warranties arise from the representations of the parties and are made as the basis of the bargain between them, and because under Pennsylvania law, claims for breach of implied warranties such as for good faith and fair dealing are subsumed in breach of contract claims, we find that these same considerations apply to Plaintiff's claims for breach of express and implied warranty as set forth in Counts IV and V. See, Davis v. Wells Fargo, 824 F.3d 333, 352 (3d Cir. 2016)("A claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim as the covenant does nothing more than imply certain obligations into the contract itself"); Bentzley v. Medtronic, Inc., 827 F. Supp. 2d 443, 445 (E.D. Pa. 2011)("Because express warranties are specifically negotiated [rather than automatically implied by law],... the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them."); Goodman v. PPG Industries, Inc., 2004 PA Super 151, 849 A.2d 1239, 1243 (Pa. Super. 2004)(same); Davenport v. Medtronic, Inc., 302 F. Supp. 2d 419, (E.D. Pa. 2004)(citing Mitchell v. Collagen Corp., 126 F.3d 902, 915 (7th

15

Cir. 1997))("Express warranties arise from the representations of the parties and are made as the basis of the bargain between them").

Here, it appears from the allegations in the Complaint and the exhibits attached thereto, and from the affidavits attached to both Defendants' Brief in Support of Motion to Dismiss and Plaintiff's Brief in Opposition that the business relationship between the parties was initiated when Plaintiff's principal Paul Pysh contacted Defendants in the hopes of initiating just such a relationship. (Pl's Compl., ¶ 12). The complaint alleges that Mr. Pysh spoke with an unidentified representative of Defendants and scheduled an appointment to meet with them at their offices in Vancouver, British Columbia, Canada. Mr. Pysh thereafter met with Defendants Ariel and Segoly in Vancouver in August, 2014 at which time he explained that he was new to the jewelry industry and that he was seeking guidance and advice on how to become a successful diamond dealer. (Compl., ¶s 13-16). At that meeting, Defendant Ariel told Mr. Pysh that not only would the defendants sell diamonds to Plaintiff at prices that Plaintiff's competitors could not match, but that he would guide and teach Plaintiff the necessary aspects of the jewelry business to enable it to become a successful jewelry merchandiser. (Compl., ¶s 17-19). Thereafter, it appears that the parties' communicated with one another via phone and email from their respective locales in

Pennsylvania and Canada and that various diamonds were shipped from Vancouver to Plaintiff at its address in Brookville, Pennsylvania with Plaintiff's payments therefor being wired from Pennsylvania to the Royal Bank of Canada in Vancouver. (Compl., Exhibits "A," "B," "D" - "J"). Although Mr. Pysh apparently returned several times for personal meetings with Defendants, it appears that these meetings likewise took place in Vancouver. (Exhibit 3 to Declaration of Paul Pysh, annexed to Pl's Response in Opposition to Motion to Dismiss). The individual defendants Segoly and Ariel are and at all relevant times have been residents of Vancouver - neither has ever been a resident of the United States, nor has either of them ever solicited business in or traveled to Pennsylvania in the time they have been employed by the corporate defendants (6 and 11 years, respectively) and never traveled to Pennsylvania in connection with any business relationship or transaction involving Plaintiff Cala Diamonds. Although HRA Group USA is an American corporation, incorporated in the State of Washington, it is alleged that Defendants HRA Group Holdings and Crossworks are headquartered and have their principal places of business in Vancouver. (Pl's Compl., ¶s 2 - 6; Exhibits "A," and "B" to Defendants' Brief in Support of Motion to Dismiss).

Generally speaking "informational communications in furtherance of a contract between a resident and a nonresident

17

does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the non-resident defendant." <u>Vetrotex Certainteed v. Consolidated Fiber Glass</u>, 75 F.3d 147, 152 (3d Cir. 1996). Further, "it is well established that a nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident." <u>BabyAge.com, Inc. v. Center for Environmental Health</u>, 90 F. Supp. 3d 348, 355 (M.D. Pa. 2015)(quoting <u>Sunbelt Corp. v. Noble,Denton & Assocs., Inc.</u>, 5 F.3d 28, 32 (3d Cir. 1993)). In contract cases, however, "federal courts may exercise specific jurisdiction if the defendant's contacts with the forum were instrumental in either formation of the contract or its breach." <u>Streamline Bus Services, LLC v. Vidible, Inc.</u>, Civ. A. No. 14-1433, 2014 U.S. Dist. LEXIS 118657 at *22 (E.D. Pa. Aug. 26, 2014)(citing <u>Mendelsohn, Drucker & Assocs. v. Titan Atlas Manufacturing</u>, 885 F. Supp. 2d 767, 773 (E.D. Pa. 2012)).

In this case, while there is no evidence that a written contract was ever negotiated or consummated, it is obvious that an oral agreement resulted from the Plaintiff's having contacted Defendants in and then traveling to Vancouver such that it may be concluded that this contract (to teach Plaintiff about the jewelry business and to sell diamonds to it) was formed in Canada. That fact notwithstanding, however, it appears that the

subsequent course of dealing between the parties involved both Plaintiff and Defendants having contacted one another via phone and/or email on multiple occasions and that many of these contacts were initiated by Defendants seeking to sell diamonds to Plaintiff and to otherwise further their business relationship by, *inter alia,* editing informational handouts and advertising materials.  There is also evidence that in the ordinary course of their business dealings, Defendants regularly shipped their diamonds to Plaintiff at Plaintiff's address in Brookville, PA along with the invoices for payment for those shipments.  In so doing, we find that Defendants did, in fact, "purposely avail themselves of the privilege of conducting activities" within Pennsylvania, thus "invoking the benefits and protections of its laws," and making it "reasonably foreseeable that it would be haled into court" here.  <u>Hanson v. Denckla</u>, and <u>World-Wide Volkswagen</u>, both <u>supra</u>.  We likewise find that through their course of dealings, Defendants' contacts with this state were instrumental in their alleged breach of their agreement with Plaintiff.  We therefore find that sufficient minimum contacts exist to justify the exercise by this Court of specific jurisdiction over Plaintiff's claims for breach of contract and breach of express and implied warranties.

**(ii) Claims for fraud, fraudulent concealment and negligent misrepresentation**

We likewise find that sufficient, minimum contacts exist between Defendants and the Commonwealth of Pennsylvania to warrant the exercise of personal jurisdiction with regard to Plaintiff's tort claims. In Pennsylvania, "fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth or look or gesture." <u>Rohm and Haas Co. v. Continental Casualty Co.</u>, 566 Pa. 464, 781 A.2d 1172, 1179 (2001)(quoting <u>Moser v. DeSetta</u>, 527 Pa. 157, 589 A.2d 679, 682 (1991)); <u>Sarpolis v. Tereshko</u>, 26 F. Supp. 3d 407, 419 (E.D. PA. 2014). "That is, there must be a deliberate intent to deceive." <u>Rohm and Haas</u>, <u>supra</u>. "To prove fraud in Pennsylvania, a plaintiff must prove six elements: 1) a misrepresentation, 2) material to the transaction, 3) made falsely, 4) with the intent of misleading another to rely on it, 5) justifiable reliance resulted, and 6) injury was proximately caused by the reliance." <u>Santana Products v. Bobrick Washroom Equipment, Inc.</u>, 401 F.3d 123, 136 (3d Cir. 2005)(citing <u>Viquers v. Philip Morris USA, Inc.</u>, 2003 PA Super 446, 837 A.2d 534 (Pa. Super. 2003).

In similar fashion, "the concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement." <u>Rohm and Haas</u>, <u>supra</u>,(quoting

Moser, supra, at 682). "In order to state a cognizable claim for fraudulent concealment under Pennsylvania law, a plaintiff's claim must rest on a duty to disclose as 'there can be no liability for fraudulent concealment absent some duty to speak.'" McLaughlin v. Bayer Corporation, 172 F. Supp. 3d 804, 825 (E.D. Pa. 2016)(quoting City of Rome v. Glanton, 958 F. Supp. 1026, 1038 (E.D. Pa. 1997)). A duty to disclose does not typically arise unless there is a confidential or fiduciary relationship between the parties. Id. Negligent misrepresentation, in turn, "requires proof of: (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known of its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." Telwell Inc. V. Grandbridge Real Estate Capital LLC, 2016 PA Super 159, 143 A.3d 421, 430 (2016)(quoting Bilt-Rite Contrs., Inc. v. Architechtural Studio, 581 Pa. 454, 866 A.2d 270, 277 (Pa. 2005)). Inasmuch as all three of these claims involve the element of intent, analysis of the sufficiency of Defendants' minimum contacts for purposes of determining the existence of specific personal jurisdiction may properly be conducted jointly under both the traditional tests and under the so-called "effects test" first articulated in Calder v. Jones, supra.

In so doing, we again note that the evidentiary materials annexed to the Plaintiff's complaint and in support of both the motion to dismiss and the response in opposition evince that while the business relationship between the parties may have been initiated by the Plaintiff in Canada, it could not have been continued without Defendants' having offered diamonds for sale to Plaintiff in Pennsylvania over the course of a nearly-two year period, which offers were accepted by Plaintiff resulting in the diamonds being shipped to Pennsylvania and subsequently paid for by Plaintiff from its Pennsylvania bank account.  It was in the course of these dealings that Defendant made a number of allegedly intentional and/or negligent misrepresentations about, *inter alia,* the quality, origins and value of the diamonds which it was offering and selling to Plaintiff and/or fraudulently concealed the true quality, history and nature of its jewelry in order to induce Plaintiff to purchase it.  By these alleged actions then, we find that Defendants expressly aimed their tortious conduct at and committed an intentional tort in and the brunt of which was felt by Plaintiff in Pennsylvania.  So saying, we find that the exercise of personal jurisdiction over Defendants with regard to Plaintiff's claims for fraud, fraudulent concealment and negligent misrepresentation is also proper.

**iii) Corporate Defendants**

In their Memorandum in Support of the Motion to Dismiss, Defendants do not dispute whether Crossworks maintained minimum contacts with Pennsylvania. (Doc. No. 12, at 12-13). Instead, Defendants argue that Crossworks' contacts cannot be imputed to the remaining Corporate Defendants. Plaintiff alleges that both the Pink Diamond and the Diamond Rings were shipped to, and received in, Pennsylvania. The two invoices that correspond to these transactions are on Crossworks' letterhead and, additionally, list Plaintiff's Pennsylvania address as the location where the items were to be shipped. (Compl., Ex. B, D). Here, these items purchased by Plaintiff, from Crossworks, were purposely shipped to Pennsylvania and received by Plaintiff, without the unilateral activity of a third-party; accordingly, these contacts cannot be said to be fortuitous. See, World-Wide Volkswagen, 444 U.S. at 297. Since each of Plaintiff's claims arise from these transactions, the intentional delivery of these items into Pennsylvania establishes the necessary contacts with this forum for the purposes of exercising specific jurisdiction. Id., See, Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 492 (3d Cir. 1985).

Finding that certain minimum contacts are present for Defendant Crossworks, it is necessary for us now to determine whether these contacts may be imputed to the remaining Corporate Defendants. It is already established that, "[a] parent-

subsidiary relationship is by itself an insufficient reason to pierce the corporate veil in the jurisdictional context." Dutoit v. Strategic Minerals Corp., 735 F.Supp. 169, 171 (E.D. Pa. 1990).  While no definitive test has been established for determining when contacts may be imputed to a parent entity, the Third Circuit has provided some factors to be considered, such as "whether the subsidiary corporation played any part in the transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded."  Lucas v. Gulf & W. Indus., Inc., 666 F.2d 800, 806 (3d Cir. 1981). Furthermore, "contacts should be imputed when the subsidiary was either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself."  Action Mfg. Co. v. Simon Wrecking Co., 375 F. Supp. 2d 411, 421 (E.D. Pa. 2005); See, Arch v. Am. Tobacco Co., 984 F.Supp. 830, 836 (E.D. Pa. 1997).

Plaintiff argues that a handout referencing the Pink Diamond, which stated that the particular showcase was "being presented by CALA Diamonds and HRA/Crossworks," was evidence of Defendants' affiliation with one another.  (Doc. No. 16, at 20). Plaintiff also points to an invoice that is unrelated to the three transactions at issue here, which lists all three Corporate Defendants as the sellers and Plaintiff as the buyer.  (Doc. No.

16, Ex. B).  It is worth noting that, on the invoice, both HRA Group and Crossworks have the same address, telephone number, and fax number listed. Id.  Lastly, Plaintiff asserts that Ariel and Segoly's association with the remaining Corporate Defendants connects the three Corporate Defendants in such a way that permits Crossworks' contacts to be imputed to the others.

Here, we find that a majority of the factors suggest that Crossworks contacts must be imputed to HRA Group.  First, Plaintiff alleges that Segoly, as Brand Manager for HRA Group, had been involved with the Pink Diamond transaction from the onset and asserts that it was Segoly who made the misrepresentations in regards to this item. Thus, HRA Group, by way of its agent Segoly, allegedly played a part in this transaction.  Moreover, with all things considered, it appears as though HRA Group and Crossworks performed as though they were one entity in the course of the Pink Diamond transaction, suggesting a lack of separation and independence between the two corporate entities.

In addition, the handwritten invoice, listing all three Corporate Defendants as sellers, and Ariel's declaration, stating that he is the Group Executive for HRA Group, HRA USA, and Crossworks, are a strong indication that Crossworks is merely an alter ego of HRA Group, such that Crossworks could "be said to be a mere department of" HRA Group.  See, Arch, 984 F. Supp. at 837.

Try though as we might, we cannot find such a relationship between HRA USA and Crossworks as there simply is no evidence aside from Ariel's statement that he is the Group Executive for all three and the one, unrelated invoice which merely contains the names of all three entities but no other information as to which was shipping the materials referenced. Given that we cannot find this to be sufficient evidence of HRA USA's involvement in this controversy, we find that HRA USA lacks the required minimum contacts with this forum so as to warrant the exercise of personal jurisdiction over it. Consequently, the motion to dismiss shall be granted as to HRA USA only.

### (iv) Individual Defendants

Defendants argue that this Court may not exercise personal jurisdiction over Segoly and Ariel for three reasons. One, they contend that the Individual Defendants lack the required minimum contacts with Pennsylvania. (Doc. No. 12, at 11). Two, they maintain that jurisdiction cannot be imputed from a corporate Defendant to an individual employee. Id., at 15-17. And third, they argue that the exercise of personal jurisdiction over the Individual Defendants would not comport with the notions of fair play and substantial justice. Id., at 13-15.

"Generally, a court does not have personal jurisdiction over an individual defendant whose only contact with the forum state are those taken in his corporate capacity." Continental

_Materials, Inc. v. Robotex, Inc._, Civ. A. No. 14-6941, 2015 U.S. Dist. LEXIS 50708 at *4, n.4 (E.D. Pa. April 17, 2016)(citing _United Products Corp. v. Admiral Tool & Mfg._, 122 F. Supp. 2d 560, 562 (E.D. Pa. 2000)).  "The general rule does not apply when the corporate officer is charged with '(1) committing a tort in his corporate capacity or (2) violating a statutory scheme that provides for personal, as well as corporate, liability for corporate actions.'" _Id._(quoting _Id._)  "However, 'in Pennsylvania, corporate officers and directors are liable for the tortious acts the corporation commits under their direction or with their participation.'" _Id._(quoting _Advanced Fluid Systems, Inc. v. Huber_, No. 13-3087, 2014 U.S. Dist. LEXIS 62799, 2014 WL 1808652, *12 (M.D. Pa. May 7, 2014)).

In resolving this issue, we once again look to the averments contained in the plaintiff's complaint, the exhibits attached thereto and the exhibits annexed by Defendants to their Motion to Dismiss and by Plaintiff to its Memorandum of Law in opposition. In so doing, we note that the complaint alleges that Segoly and Ariel were acting "at all times relevant herein ... within the scope of [their] employment and/or agency with Crossworks, HRA Group and/or HRA USA," (Complaint, ¶s 6, 8) and that the fraudulent, negligent and other representations which form the basis for this action are all alleged to have been made by these two individual defendants on behalf of the corporations.  (Pysh

Declaration, Exhibit 3 to Doc. No. 16, Ex. A, at 71-79).  See,
e.g., Calder, supra; J.G v. C.M., Civ. No. 11-2887, 2013 WL
1792479, at *4 (D.N.J. April 26, 2013)(holding that a defendant
who makes tortious statements to a party in a different state can
foresee that the harm from the tortious statement will be felt
there, and, consequently, should foresee being haled into court
in that forum).  Thus, we find that these alleged tortious
communications by Ariel and Segoly, regarding the Pink Diamond,
the Diamond Rings, and the Riviera Necklace, caused harm to be
felt in Pennsylvania, "such that the forum can be said to be the
focal point of the harm suffered by the plaintiff." IMO
Industries, 155 F.3d 254, 265-66.  Further, as the exhibits
attached to the pleadings and motions evince that Ariel and
Segoly knew that Plaintiff resided in Pennsylvania, and,
therefore, that when they made these tortious statements they
were "expressly aiming" their conduct at Pennsylvania so that
Pennsylvania would "be the focal point of the tortious activity,"
we find that these communications are sufficient contacts for the
purpose of personal jurisdiction over the individual defendants
as well.

   **B.  Economic Loss and Gist of the Action Doctrines**

   Defendants next contend that Plaintiff's claims for fraud,
fraudulent concealment and negligent misrepresentation are barred

by operation of the economic loss and/or the gist of the action doctrines.  We agree.

Generally speaking, "[t]he economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 671 (3d Cir. 2002)(quoting <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 618 (3d Cir. 1995)). Thus, under the economic loss doctrine, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." <u>Excavation Technologies, Inc. v. Columbia Gas Co.</u>, 604 Pa. 50, 52, 985 A.2d 840, 841, n.3 (2008)(quoting <u>Adams v. Copper Beach Townhomes Communities, L.P.</u>, 2003 PA Super 30, 816 A.2d 301, 305 (Pa. Super. 2003)); <u>Donaldson v. Davidson Bros.</u>, 2016 PA Super. 150, 144 A.3d 93, 101 (Pa. Super. 2016).

The gist of the action doctrine similarly bars a plaintiff from re-casting ordinary breach of contract claims into tort claims. <u>Knight v. Springfield Hyundai</u>, 2013 PA Super. 309, 81 A.3d 940, 952 (Pa. Super. 2013). "This doctrine does not preclude an action in tort simply because it resulted from a breach of a contract. <u>Id</u>. "'To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral.'" <u>Id</u>.(quoting <u>Mirizio v. Joseph</u>, 2010 PA Super 70, 4 A.3d 1073, 1079 (Pa. Super. 2010) and <u>eToll,</u>

29

Inc. v. Elias/Savion Advertising, Inc., 2002 PA Super. 347, 844 A.2d 10, 14 (Pa. Super. 2002)). A claim arises from contract, (rather than social policy), when it is one: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. MRL Development I, LLC v. Whitecap Investment Corp., 823 F.3d 195, 207 (3d Cir. 2016); Addie v. Kjaer, 737 F.3d 854, 866 (3d Cir. 2013). Thus, "[i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract - then the claim is to be viewed as one for breach of contract." Dixon v. Northwestern Mutual, 2016 PA Super 186, 146 A.3d 780, 788 (Pa. Super. 2016)(quoting Bruno v. Erie Ins. Co., 630 Pa. 79, 106 A.3d 48, 68 (2014)). "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence exists regardless of the contract, then it must be regarded as a tort." Id.

In application of the foregoing doctrinal principles to the case at hand, it appears from the facts pled in the Complaint that Plaintiff is seeking solely economic damages as the result of the failure of Defendants to sell them diamonds and jewelry which had the quality and value which Defendants represented they had and for which Plaintiff handsomely paid. These losses were not the result of any physical injuries or damage to property and arose out of Defendants' purported breach of the agreement at issue pursuant to which Defendants' offered to sell and Plaintiff agreed to buy what was purported to be high-end jewelry. As a consequence, we find that the tort claims for fraud, negligent misrepresentation and fraudulent concealment are barred by application of the gist of the action and economic loss doctrines and those claims shall be dismissed from the Complaint.

### C. Statute of Frauds

Defendants next seek the dismissal of Plaintiff's claim for breach of contract on the grounds that it is barred by operation of the Statute of Frauds, which has been codified in the Uniform Commercial Code, and adopted by Pennsylvania at 13 Pa. C. S. A. §2201. We reject this assertion.

Specifically, Section 2201 states as follows in pertinent part:

> **(a) General rule.** - Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a

31

contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.  A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in such writing.

**(b) Writing confirming contracts between merchants. -** Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received.

**(c) Enforceablity of contracts not satisfying general requirements. -** A contract which does not satisfy the requirements of subsection (a) but which is valid in other respects is enforceable:

> (1) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the business of the seller and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement;

> (2) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

> (3) with respect to goods for which payment has been made and accepted or which have been received and accepted (section 2606).

> ...

The main purpose of the writing required by the statute of frauds is to afford a basis for believing that the offered oral evidence rests on a real transaction.  <u>Eastern Dental Corp. v.</u>

Isaac Masel Co., Inc., 502 F. Supp. 1354, 1363 (E.D. Pa. 1980). It is not required that a writing in confirmation of an oral contract "expressly state that it is sent in confirmation of the prior transaction." Woodward & Dickerson, Inc. v. Yoo Hoo Beverage Co., Inc., 502 F. Supp. 395, 402 (E.D. Pa. 1980)(quoting Doral Hosiery Corp. v. Sav-A-Stop, Inc., 377 F. Supp. 387, 389 (E.D. Pa. 1974). Further, to satisfy the statute of frauds, it is not necessary for the contract to consist of a single writing "entire within itself." Brister & Koester Lumber Corp. v. American Lumber Corp., 356 Pa. 33, 50 A.2d 672, 676 (1947). Rather, the writing requirement may be satisfied where there are several writings which bear connecting reference to one another or have an undisclosed but actual relation. Id. Whether the writing or memorandum relied upon is a single document or consists of several related or connected writings, the complete terms of a valid contract must be ascertainable therefrom with certainty and an intention on the part of the vendee to be bound by the asserted contract must be disclosed. Id; Linsker v. Savings of America, 710 F. Supp. 598, 601 (E.D. Pa. 1989).

Here, we find that Plaintiff has pled sufficient facts to establish the existence of a contract for the sale of diamonds and jewelry to satisfy the statute of frauds. For one, we find that the parties here are merchants within the meaning of 13 Pa. C. S. A. §2104 and that the transactions at issue were therefore

"between merchants."[2]  Accordingly, the invoices, emails, shipping and promotional materials which are alleged to have been exchanged between the parties (numerous copies of which are annexed to the Complaint) are, we find, definite enough to reflect the terms of the parties' oral agreements and to in and of themselves constitute a written contract.  We therefore deny the motion to dismiss on the basis of the statute of frauds.

### D.  Parol Evidence Rule

Next, Defendants move for dismissal of Plaintiff's claims for fraud, fraudulent concealment and breach of contract on the basis of Pennsylvania's parol evidence rule, asserting that because parol evidence cannot be considered, the complaint fails to state such claims upon which relief may be granted.  Inasmuch as we have already determined that the fraud and fraudulent concealment claims are appropriately dismissed, we need only now address the claim for breach of contract.

Again, we look to the Pennsylvania Uniform Commercial Code which provides the following with regard to parol evidence:

---

[2] §2104 defines "merchant" as "[a] person who:

(1) deals in goods of the kind; or

(2) otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

"Between merchants" means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants, 13 Pa. C.S.A. §2104.

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

(1) by course of performance, course of dealing or usage of trade (section 1303); and

(2) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

13 Pa. C.S.A. §2202.

Although generally parol evidence cannot be used to contradict the provisions of a written, integrated contract, Pennsylvania law and §2202 allow parol evidence to be taken into consideration when attempting to discern the meaning of a written contract. QVC, Inc. v. MJC Am., Ltd., Civ. A. No. 08-CV-3830, 2011 U.S. Dist. LEXIS 77289 at *20 (E.D. Pa. July 18, 2011); Sundlun v. Shoemaker, 421 Pa. Super. 353, 617 A.2d 1330, 1334 (1992). Section 2202 thereby permits the following principles to be considered in construing agreements: (1) a writing which is final on some matters may not include all matters agreed upon; (2) the language used in a written agreement has the meaning which arises out of the commercial context in which it was used; (3) parol evidence may be considered even if the court has not determined that the language used in the written agreement is ambiguous and (4) the course of actual performance by the parties

is the best indication of what they intended the writing to mean. Getty Petroleum Marketing, Inc. v. Shipley Fuels Marketing, LLC, Civ. A. No. 07-CV-340, 2007 U.S. Dist. LEXIS 73070 at *44 (E.D. Pa. Sept. 27, 2007). The Code is for the most part in keeping with Pennsylvania common law insofar as under common law, after consideration of the text of a written contract in light of any evidence of trade usage and performance of the parties the intent of the parties remains unclear, evidence concerning the pre-contract negotiations of the parties may also be considered in reaching a conclusion concerning the intention of the parties. Astenjohnson, Inc. v. Columbia Casualty Co., 562 F.3d 213, 220 (3d Cir. 2009)(citing Resolution Trust Corp. v. Urban Redevelopment Authority of Pittsburgh, 536 Pa. 219, 225-226, 638 A.2d 972, 975-976 (1994)); General Refractories Co. v. First State Insuranced Co., 94 F. Supp.3d 649, 660 (E.D. Pa. 2015). Given that parol evidence addressing what the parties' intended when they entered into the agreements for the purchase and sale of the various rings, diamonds and other items at issue is permissible, we decline to dismiss the claim for breach of contract on this basis.

### E. Sufficiency of Pleading - Breach of Express and Implied Warranties

Defendants similarly submit that Plaintiff's Complaint fails to adequately plead claims for breach of express and/or implied warranties upon which relief can be granted. With respect to

these claims, the motion shall be granted in part and denied in part.

At the outset, we observe that Pennsylvania law holds that "a claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim" such that such claims cannot be maintained "separate and distinct from a breach of contract claim." <u>Davis v. Wells Fargo</u>, <u>supra</u>(quoting, *inter alia*, <u>Burton v. Teleflex, Inc.</u>, 707 F.3d 417, 432 (3d Cir. 2013), <u>LSI Title Agency, Inc. v. Evaluation Services, Inc.</u>, 2008 PA Super 126, 951 A.2d 384, 392 (Pa. Super. 2008) and <u>JHE, Inc. v. SEPTA</u>*,* No. 1790, 2002 Phila. Ct. Com. Pl. LEXIS 78, 2002 WL 1018941, at *5 (Pa. Com. Pl. May 17, 2002)); <u>Aaron v. State Farm Fire & Casualty Co.</u>, Civ. A. No. 17-2606, 2017 U.S. Dist. LEXIS 128994, *6, 2017 WL 3484087, *6 (E.D. Pa. Aug. 14, 2017). Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed as duplicative.

As to the remaining express and implied warranty claims, the Pennsylvania Uniform Commercial Code again has application. In particular, 13 Pa. C. S. A. §2313 reads:

**§2313. Express warranties by affirmation, promise, description or sample**

**(a) General rule. -** Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an

express warranty that the goods shall conform to the
affirmation or promise.

(2) Any description of the goods which is made part of
the basis of the bargain creates an express warranty
that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis
of the bargain creates an express warranty that the
whole of the goods shall conform to the sample or
model.

**(b) Formal words or specific intent unnecessary. -** It is not
necessary to the creation of an express warranty that the
seller use formal words such as "warrant" or "guarantee" or
that he have a specific intention to make a warranty, but an
affirmation merely of the value of the goods or a statement
purporting to be merely the opinion of the seller or
commendation of the goods does not create a warranty.

A successful claim for breach of express warranty must plead

the substance of the seller's statements, reliance on behalf of

the buyer or consumer which presumes an awareness of the warranty

and, finally, damages that were proximately caused by the alleged

breach. Yurcic v. Purdue Pharma, L.P., 343 F. Supp. 2d 386, 394

(M.D. Pa. 2004); Price v. Chevrolet Motors Division of GMC, 2000

PA Super 410, 765 A.2d 800, 809 (Pa. Super. 2000). Indeed,

"[a]bsent a demonstration that a promise or affirmative statement

was made, how or by whom the promise was made, or what was in

fact promised, a claim for breach of express warranty is not

sufficiently pled." Incubadora Mexicana, SA de CV v. Zoetis,

Inc., 310 F. R. D. 166, 173 (E.D. Pa. 2015)(citing Gross v.

Stryker Corp., 858 F. Supp. 2d 466, 501-02 (W.D. Pa. 2012)).

In examining the Complaint under the lens of these requirements, we find that Plaintiff alleges that in offering the pink diamond, the diamond rings and the Riviera necklace for sale, Defendants Segoly and Ariel represented to Paul Pysh, *inter alia*, that the pink diamond was one of only two diamonds in the pink color grade larger than one carat to come out of Canada, that the five colored diamond rings were not clarity or color-enhanced and that the Riviera necklace had been designed by award-winning designer Reena Ahluwalia and worn on the red carpet at the Academy Awards by actress Kate Hudson and that all of these pieces had much greater resale values than Plaintiff was eventually able to realize. The Complaint further avers that Plaintiff relied on these statements in deciding to purchase the jewelry and that because the items were not of the same quality, origins or value as had been represented, Plaintiff lost significant amounts of money when it tried to re-sell them. These allegations are we find, sufficient to plead a claim for breach of express warranty. We therefore deny the motion to dismiss Count IV.

Implied warranties are implied by law to protect buyers from loss where goods purchased are below commercial standards. <u>Barton v. Lowe's Home Centers, Inc.</u>, 2015 PA Super 203, 124 A.3d 349, 357 (Pa. Super. 2015). The implied warranties of merchantability and fitness for a particular purpose are also codified in the

Pennsylvania Uniform Commercial Code at 13 Pa. C. S. A. §§2314 and 2315, which sections provide as follows:

### §2314.  Implied warranty: merchantability; usage of trade

**(a) Sale by merchant. -** Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

**(b) Merchantability standards for goods. -** Goods to be merchantable must be at least such as:

> (1) pass without objection in the trade under the contract description;

> (2) in the case of fungible goods, are of fair average quality within the description;

> (3) are fit for the ordinary purposes for which such goods are used;

> (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

> (5) are adequately contained, packaged, and labeled as the agreement may require; and

> (6) conform to the promises or affirmations of fact made on the container or label if any.

**(c) Course of dealing or usage of trade. -** Unless excluded or modified (section 2316) other implied warranties may arise from course of dealing or usage of trade.

### §2315.  Implied warranty: fitness for a particular purpose

Where the seller at the time of contracting has reason to know:

> (1) any particular purpose for which the goods are required; and

> (2) that the buyer is relying on the skill or judgment
> of the seller to select or furnish suitable goods;

there is unless excluded or modified under section 2316
(relating to exclusion or modification of warranties) an
implied warranty that the goods shall be fit for such
purpose.

To recover for breach of the implied warranty of merchantability, Plaintiff must plead and prove both that the seller was a "merchant" and that the goods were not "merchantable" at the time of the sale. <u>Killen v. Spine</u>, Civ. A. No. 11-1508, 2012 U.S. Dist. LEXIS 141639 at * 31 (W.D. Pa. Aug. 21, 2012). "Whether goods are merchantable within the meaning of the U.C.C. is not a function of whether there is a consumer demand for the product, unless that diminished consumer demand is a result of a defect in the product." <u>M. Leff Radio Parts, Inc. v. Mattel, Inc.</u>, 706 F. Supp. 387, 395 (W.D. Pa. 1988). Stated otherwise, "there is no breach of implied warranty of merchantability where the product was not 'defectively manufactured or any way substandard in construction and performance.'" <u>Id.</u>(quoting, *inter alia*, <u>Lesnefsky v. Fischer & Porter Co.</u>, 527 F. Supp. 951, 957 (E.D. Pa. 1981) and <u>Sessa v. Riegle</u>, 427 F. Supp. 760, 769 (E.D. Pa. 1977), *aff'd,* 568 F.2d 770 (3d Cir. 1978)). Further, "[t]he concept of merchantability does not require that the goods be of the best quality or the best obtainable but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed, that they be free from

significant defects, that they perform in the way that goods of that kind should perform and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used." Barton v. Lowe's, 124 A.3d at 357-358 (quoting Gall by Gall v. Allegheny County Health Department, 521 Pa. 68, 555 A.2d 786, 789 (1989)).

"The implied warranty of fitness for a particular purpose 'arises by operation of law and serves to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose.'" Incubadora Mexicana, 310 F.R.D. at 175(quoting Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992)). To establish a breach of the implied warranty of fitness for a particular purpose, a plaintiff must show that the seller had reason to know of the buyer's particular purpose at the time of sale and that the buyer was relying on the seller's expertise, as well as that the goods purchased were defective. Id.

In reviewing the facts alleged in the Complaint and in particular those contained in Count V for breach of implied warranties, we do not find that such a cause of action has been adequately pled. To be sure, Plaintiff avers only that its representative (Paul Pysh) contacted and eventually met with Defendants at their office in Vancouver, Canada at which time he solicited advice and guidance on how to become a successful

diamond dealer.  (Pl's Compl., ¶s 12-16).  Plaintiff alleges that

Defendants, through Ariel and Segoly, not only provided assurances

that they would sell diamonds to Plaintiff, but also that they

would "provide guidance and teach Plaintiff the aspects of the

jewelry business needed to become a successful jewelry

merchandiser."  (Pl's Compl., ¶s 17-18).  Thereafter, Defendants

are alleged to have reached out and offered for sale to Plaintiff

various articles of jewelry such as the five diamond rings, the

Riviera necklace and the pink diamond which subsequently turned

out to not have the values or the pedigrees which Defendants had

represented.  Noticeably absent from the complaint are any facts

that the items which were sold by Defendants to Plaintiff were

defective or not of the general kind described or reasonably fit

for the general purposes for which jewelry is typically sold or

used.  Inasmuch as the only issue with the items sold are that

they did not have the value that they were represented to have

had, we cannot find that they were either unmerchantable or not

fit for a particular purpose.  So saying, we shall grant the

motion to dismiss Count V.

## Conclusion

In light of all of the foregoing, Defendants' Motion to

Dismiss shall be granted with respect to Counts I, II, V and VI

and Defendant HRA USA.  In all other respects the Motion shall be

denied in accordance with the annexed Order.